United States Courts
Southern District of Texas
FILED

OCT 1 2 2004

Michael N. Milby, Clerk of Court

| | |
|---|---|
| **United States District Court** <br> **Southern District of Texas** <br> **Corpus Christi Division** | |
| Phyllis Meyer <br><br> vs. <br><br> NCO Financial Systems, Inc., and <br> MBNA America Bank, N.A. | No. _____ <br> [Jury Request] |

## <u>Original Complaint</u>

TO THE HONORABLE COURT:

     Phyllis Meyer ("Meyer") respectfully files this Original Complaint against NCO Financial Systems, Inc. ("NCO") and MBNA America Bank, N.A. ("MBNA").

### <u>Federal Jurisdiction</u>

     1. Federal jurisdiction exists relative to NCO Financial Systems, Inc. Federal Fair Debt Collection Practices Act. **<u>See</u>** 15 U.S.C. 15 U.S.C. 1692k.  Further, Diversity of Jurisdiction exists in that Plaintiff is a citizen of Texas and Defendants are Citizens of States other than Texas. Further, ancillary or supplementary jurisdiction exists relative to MBNA Bank of America, N.A.

### <u>Defendant</u>

     2.  NCO Financial Systems, Inc. may be served through its Registered Agent at its Registered Office: CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201/

     3. MBNA America Bank, N.A. may be served through its President: Bruce L. Hammonds, P.O. Box 15137, Wilmington, Delaware 19886-5137.

### <u>Phyllis Meyer</u>

     4. Meyer is sick and elderly.

     5. Meyer's daughter handles her business affairs under a power of attorney.

     6. Meyer's has become upset including physical symptoms (hives).

### <u>MBNA America</u>

     7.  MBNA promised plaintiff a specific interest rate of 9.9%.

     8.  MBNA increased the rate to 24.9% breaching the agreement.

9. All payments were timely made. There was no basis to increase the rate.

> "We have been given every excuse for why it was raised and none of it is true."

> "Finally, someone from your company admitted there was no reason."

> "We made all payments on time and always made more than the minimum payment."

10. The agreement was the interest rate would remain 9.9% until full payment.

> Lower interest rates were available but Meyer elected 9.9% for the specific reason that it was guaranteed until full payment.

11. MBNA said it would correct the interest rate and never did.

12. MBNA said it would remove late and over limit charges and never did.

13. MBNA made harassing and hateful phone calls.

14. MBNA sent the following letter:

> I would like to formally apologize for any inconvenience you may have suffered due to previous conversations.... I will be personally committed to providing you with the quality service and respect ... you ... deserve.

15. MBNA stated  it could not understand why the interest rate had been raised. MBNA tried at one point to correct the interest rate but could not (the computer wouldn't allow). .

16. At one point MBNA offered a lower payoff, but this was declined because MBNA said they would still report Meyer to the credit bureau even though she paid timely until MBNA breached.. MBNA breached by increasing the interest rate from 9.9% to over 24%.

17. The Court should grant declaratory judgment against MBNA on the amount owed. The Court should also grant attorneys' fees and court courts.

18. The conduct describe constitute violations of the Texas Fair Debt Collection Practices Act and the Texas Deceptive Trade Practices Act and the Texas Tort of Unreasonable Debt Collection. Sufficient culpability exists for exemplary damages. The Court should grant actual, statutory, and exemplary damages. The Court should grant attorneys' fees and court costs. The Conduct also amounts to breach of contract. Actual damages equal the excess interest charged. The Court should award actual damages and attorneys' fees and court costs. Further, the excess charges of interest amount to usury. The Court should award the remedy provided by statute.

## NCO Financial Systems

19. NCO repeatedly falsely accused Plaintiff and her daughter of "committing fraud" against the Bank. Also, NCO falsely accused the daughter of committing fraud against the mother.

20. NCO told the daughter it was going to stop her from "using" her mother. Further, NCO stated that it would "take care" of the mother.

21. NCO told the daughter to "shut up."

22. NCO threatened to sue Plaintiff (an action it did not intend to take).

23. NCO repeatedly called and harassed Plaintiff despite instruction written and oral not to.

24. NCO repeatedly stated it would continue to call if it wanted to or felt like it.

25. NCO repeatedly yelled at Plaintiff and her daughter.

26. NCO falsely represented itself as an attorney's office.

27. NCO tried to get Meyer to transfer $18,000 to discovery card while falsely misrepresenting her daughter was on conference call and knowing her daughter was to handle business because of her age. NCO asked Meyer whether her daughter "cleaned her house."

28. NCO called the daughter a "bitch."

29. NCO now asserts "arbitration" when there is no arbitration agreement (not to Meyer's knowledge). NCO sent an arbitration demand quoting fine legal print purporting to constitute an arbitration agreement. It also sent unreadable language purportedly apparently supposedly an arbitration agreement. However, the unreadable language does not appear to be the same as the quoted fine print (some parts are appear to be the same but not all). Further, Meyer never agreed to it. No signature exists. She never agreed to it. There is no such agreement.

30. The Conduct described above constitutes violations of the Federal and Texas Fair Debt Collection Practices Act, the Texas Deceptive Trade Practices Act, and the Texas Tort of Unreasonable Debt Collection. Sufficient culpability exists for exemplary damages.

## Conditions Precedent

31. All conditions precedent have occurred or have been performed.

## Conclusion

32. The Court should grant all relief requested above including actual damages, exemplary damages, statutory damages, attorneys' fees, and court costs. Further, the Court should grant prejudgment interest and post-judgment interest.

Respectfully Submitted,

David A. Sibley
P.O. Box 9610
Corpus Christi, Texas 78469-9610
719 N. Upper Broadway, Suite 205
Corpus Christi, Texas 78401
(361) 882-2377 -- Telephone
(361) 882-3322 -- Telecopier
ds@davidsibley.com
State Bar No. 18337600
Attorney-In-Charge for Phyllis Meyer

4



Contact Us



Home | Credit Cards | Loans | CDs & Money Markets | MBNA

**About MBNA**

**Company Profile**

**All Are Welcome**

**Investor Relations**

**Board of Directors**

**Corporate Governance Guidelines**

**Committees**

**Ethics Guide**

**Articles of Incorporation**

**Bylaws**

**Careers**

**Contact Us**

Corporate Governance - Board of Directors

All of the Corporation's directors also serve as directors of MBNA America Bank, N.A. (the "Bank"), the Corporation's principal subsidiary.



**Randolph D. Lerner, Esq.,** has been Chairman of the Corporation since November 2002. He has been a director of the Corporation and the Bank since April 1993. He is the owner and Chairman of the Cleveland Browns football team. He was previously a partner in Securities Advisors, L.P., which he had managed since September 1991. He is on the Board of Trustees of the New York Academy of Art, and a member of the Board of Trustees of the Hospital for Special Surgery in New York City. He is a member of the District of Columbia and New York Bar Associations.



**Bruce L. Hammonds** has been President and Chief Executive Officer of the Corporation and a director of the Corporation since December 2003. He most recently served as Chairman and Chief Executive Officer of the Bank. He previously served as Chief Operating Officer of the Bank and has been a director of the Bank since 1986. He has 34 years of management experience in consumer lending and was a member of the management team that established

EX. A

MBNA in 1982.



**James H. Berick, Esq.,** has been a director of the Corporation since January 1991 and a director of the Bank since April 1991. He retired on December 31, 2002, as a partner of Squire, Sanders & Dempsey L.L.P., the successor to Berick, Pearlman & Mills Co., L.P.A., of which Mr. Berick was Chairman from July 1986 until January 2000. He is a director of The Town and Country Trust.



**Mary M. Boies, Esq.,** has been a director of the Corporation and the Bank since June 2004. She is a partner at Boies & McInnis LLP, a law firm that specializes in commercial, securities, and antitrust litigation. She is also the founder and Chief Executive Officer of Mary Boies Software, Inc., a publisher of educational software. Earlier in her career, she was a Vice President with CBS, Inc., and general counsel for the Civil Aeronautics Board. She served as Assistant Director of the White House Domestic Policy Staff during the Carter Administration, and she was Counsel to the United States Senate Commerce Committee. She serves on the boards of Business Executives for National Security, the Dean's Council, Harvard University John F. Kennedy School of Government, and the Harvard Committee on University Resources.



**Benjamin R. Civiletti, Esq.**, has been a director of the Corporation and the Bank since April 1993. He served as Managing Partner of Venable LLP from 1987 to 1993 and has served as Chairman since 1993. He was Attorney General of the United States from 1979 to 1981. He is a director of The GEO Group, Inc.



**William L. Jews** has been a director of the Corporation and the Bank since June 2000. He is the President and Chief Executive Officer of CareFirst BlueCross BlueShield and is Chief Executive Officer of Blue Cross Blue Shield of Delaware. He serves as a director of the National Blue Cross and Blue Shield Association, Choice Hotels International, Inc., Ecolab, Inc., and the Ryland Group. He is also a member of the Baltimore County Revenue Authority.



**Stuart L. Markowitz, M.D.**, has been a director of the Corporation and the Bank since April 1991. He is an internist and Managing Partner of Drs. Markowitz, Rosenberg, Stein & Associates, a private medical practice, and is Clinical Professor at Case Western Reserve University, College of Medicine, where he has taught since 1976.

**William B. Milstead** has been a director of the Corporation and the Bank since May 2003. He is a former partner of Ernst & Young LLP, having



retired in March 1997. He was employed by Ernst & Young in public accounting and auditing for 31 years, the last 19 years as a partner. He served as the coordinating partner for the Corporation at the time of its initial public offering in 1991 and until 1993.



**Laura S. Unger, Esq.**, has been a director of the Corporation and the Bank since June 2004. An expert in securities regulation, she is the former Acting Chairman of the Securities and Exchange Commission (2001-2002) and served as Commissioner of the Securities and Exchange Commission between 1997 and 2001. She currently serves as the independent consultant for independent research at JPMorgan. Earlier in her career, she was Counsel to the United States Senate Committee on Banking, Housing and Urban Affairs. She began her career as an attorney in the Enforcement Division of the Securities and Exchange Commission. She is a director of Ambac Financial Group, Inc., and Borland Software. She serves on the Non Member Advisory Board of the US Institute, the Wall Street Lawyer Advisory Board, and the SEC Historical Society Commissioner Advisory Board.

Last updated June 2004.

© 2004 MBNA Corporation

About MBNA

| Site Map | Privacy | Ter of Use

WINDOW ON STATE GOVERNMENT                    CAROLE KEETON STRAYHORN   Texas Comptroller of Public Accounts



**Corporation Search Results**

# Franchise Tax Certification of Account Status

## This Certification Not Sufficient for Filings with Secretary of State

Do **not** include a certification from this Web site as part of a filing with the Secretary of State for dissolution, merger, withdrawal, or conversion. The Secretary of State will reject a filing that uses the certification from this site.

To obtain a certificate that is sufficient for dissolution, merger, withdrawal, or conversion, see Publication 98-336, Requirements to Change Corporate Status.

| Certification of Account Status | Officers And Directors Information |
|---|---|
| Company Information: | **NCO FINANCIAL SYSTEMS INC**<br>507 PRUDENTIAL RD<br>HORSHAM, PA 19044-2308 |
| Status: | **IN GOOD STANDING NOT FOR DISSOLUTION OR WITHDRAWAL through November 15, 2004** |
| Registered Agent: | CT CORPORATION SYSTEM<br>350 N. ST. PAUL STREET<br>DALLAS, TX 75201 |
| Registered Agent Resignation Date: | |
| State of Incorporation: | PA |

Ex. B

File Number: 0009568506
Charter/COA Date: June 7, 1993
Charter/COA Type: COA
Taxpayer Number: 12316709273

Carole Keeton Strayhorn
Texas Comptroller of Public Accounts

Window on State Government
Contact Us
Privacy and Security Policy

7-28-04

Mr Gonzales called mother. Told her again she was committing fraud and he was going to sue her. She called me all upset. Mr Gonzales then left a message on my phone and I returned his call.

Again I told him mother was sick and I was taking care of this and he was still not to call mother & bother her. He told me he would call her if he wanted to. As before I told him I had Power of Attorney and he was to discuss it with me.

He started yelling at me and I told him I was not talking to him & hung up.

Ex. C

# DIANE HOFFMAN FOR PHYLLIS MEYER
## 361-463-9193

June 29, 2004

Bob Gonzales
800-933-6736 Ext 2021
602-626-1191

Bob,
After speaking with you I went to my mothers. She was very upset and broke out with hives.
I ask you not to let Ms. Reese call my mother and she did anyway. She was questioning mother and as
before mother told her she does not remember things and she would need to talk to me.
I DO NOT appreciate this and I know there are laws about harassing phone calls when you have been ask
not to call.
From now on if you want to settle this you need to speak with me and me only.
I did speak with MBNA last night and they told me this bill was wrote off. You let me to believe you were
an attorney's office which is not true.
I don't appreciate your threats and I don't appreciate Ms. Reese telling me I committed fraud. She has no
idea what she is talking about.
If MBNA would have left the interest rate at 9.9 interest this bill would have been paid. Our agreement
was our rate would stay at that till loan was paid off. The payment was never late and they had no right to
increase our rate. Alls I ask was our rate be lowered back to what it was and late charges and over the
limit fees be taken off. They said they would and the did not.
You have the letters I faxed you from MBNA. In those letters they apologize.
I feel like the settlement I sent you is more then fair. We have never tried to get out of paying.
Please let me know what you want me to do.

Diane Hoffman

Ex. D

TO; BOB GONZALES
    800-933-6736 EXT 2021
    602-626-1191

FROM; DIANE HOFFMAN FOR PHYLLIS MEYER

JUNE 28,2004

MR. GONZALES
AFTER SPEAKING WITH YOU TODAY  I TALKED WITH MY
MOTHER. WE LOOKED INTO ALL  POSSIBILITIES TO PAY
THIS ACCOUNT. WE CAN PAY $4500.00. IF YOU WILL
EXCEPT THIS AS PAYMENT IN FULL I WILL SEND YOU
THE MONEY WITHIN 48 HOURS.
PLEASE LET ME KNOW IF THIS IS EXCEPTABLE.

THANK YOU,

DIANE HOFFMAN  361-463-9193

Ex. E

1-800-40 -9225
E47 2037

June. 27, 200[

Rachel Reese

Called mother at 12:30 PM on June 27th (Sunday)
Told her it was a conference call and I was on
the other line. When the girl started talking mother
told her "that is not Diane" and they hung up.
Ms Reese was trying to get mother to transfer $18,000
to her Discover Card. She also ask Mother if I claimed
her house (None of her business)

I called Ms Reese at 12:50 PM
She started yelling at me and would not let me
explain. She told me I was committing fraud against
my mother. I ask her not to call mother it
upset her, and she said she would call her
anytime she felt like it. She said she would
stop me from seeing my mother that she was
going to take care of my mom.

I tried to explain to her that this money was
used for mom, but she just kept yelling
and telling me to shut up and I was going
to listen to her.

I have been taking care of mother since she
was in a bad car wreck in 2001 I had her
move mother here to take care of her. She has
had moving expenses and a lot of medical,
For 4 months I had to pay for 24 hour care
which cost about $900.00 a week. I am doing my
best to take care of her and I do not appreciate
Ms Reese saying I am committing fraud.

Diane Bletchman,  [



October 10, 2003

MBNA
Casandra Golden
Fax 973-848-4404
Phone 888-903-6262 EXT. 21092

From: Diane Hoffman
For Phyllis Meyer
Account No. 5490 9924 6810 7481

I am writing in regards to the harassing phone calls my mother and I have been getting.
I want them stopped and any further correspondence you have with us should be by mail.
On September 4th 2003 I received an agreement from you and you have not kept your
word. I was told if I agreed to this we  would not receive anymore threatening calls which
we have.
My mother and I have both received many calls. I have asked that you not call mother as
she is sick and you upset her. I have also asked you not call my work phone and you
continue to do so. On October 8th 2003 a Mr. Richardson I believe was his name called
mothers home and I was there. I spoke with him and he was not only hateful he also
called my daughters home and discussed this matter with her. Shortly after the
conversation with Mr. Richardson I got a call from someone else who apologized for the
way Mr. Richardson spoke to me and said the matter was not handled well.
If MBNA had kept up with the original agreement none of this would have ever
happened. You would be getting all your money and interest. We have been given every
excuse why mothers interest rate was raised and none of it was true. Finally someone
from your company admitted there was no reason why it should have been raised. We
made all payments on time and always made a more then minimum payment.
Mother always had good credit and has always paid her bills.
At this point we are not going to pay this until something is settled for the harassing and
misrepresentation of this matter.
Your company will be contacted soon.

Sincerely,
Diane Hoffman
For Phyllis Meyer

*Ex. G*

FAYEP 7:57 AM

October 10, 2003

MBNA
Casandra Golden
Fax 973-848-4404
Phone 888-903-6262 EXT. 21092

From: Diane Hoffman
For Phyllis Meyer
Account No. 5490 9924 6810 7481

I am writing in regards to the harassing phone calls my mother and I have been getting.
I want them stopped and any further correspondence you have with us should be by mail.
On September 4th 2003 I received an agreement from you and you have not kept your
word. I was told if I agreed to this we  would not receive anymore threatening calls which
we have.
My mother and I have both received many calls. I have asked that you not call mother as
she is sick and you upset her. I have also asked you not call my work phone and you
continue to do so. On October 8th 2003 a Mr. Richardson I believe was his name called
mothers home and I was there. I spoke with him and he was not only hateful he also
called my daughters home and discussed this matter with her. Shortly after the
conversation with Mr. Richardson I got a call from someone else who apologized for the
way Mr. Richardson spoke to me and said the matter was not handled well.
If MBNA had kept up with the original agreement none of this would have ever
happened. You would be getting all your money and interest. We have been given every
excuse why mothers interest rate was raised and none of it was true. Finally someone
from your company admitted there was no reason why it should have been raised. We
made all payments on time and always made a more then minimum payment.
Mother always had good credit and has always paid her bills.
At this point we are not going to pay this until something is settled for the harassing and
misrepresentation of this matter.
Your company will be contacted soon.

Sincerely,
Diane Hoffman
For Phyllis Meyer



www.MBNA.com

MBNA Marketing Systems, Inc
320 University Avenue
Newark  New Jersey 07102

PHYLLIS MEYER
C/O DIANE HOFFMAN
707 S PEARL ST
ROCKPORT TX 78382
Account No.: 5490992468107481

October 11, 2003

Dear Mrs. Diane Hoffman,

Upon receipt of your letter, I would like to formally apologize for any inconvenience you may have suffered due to previous conversations. We would certainly like to provide you with the appropriate option that would prevent your business from leaving MBNA's office and being forwarded on for further action. I will personally assume responsibility for discussing options with you going forward. I will be committed to providing you with the quality service and respect that you as a Customer deserve.

Please be advised that time is of the essence. If I am to assist you going forward, your immediate correspondence via phone will be necessary. I can be reached at 888-903-6262 ext. 21092.

Thank You,

Casandra Golden
Senior Account Manager

MBNA Marketing Systems, Inc. is a subsidiary of MBNA America Bank, N.A

Ex. H



Phyllis J. Meyer
707 S. Pearl St.
Rockport, TX 78382-2419
|lllllll|lll|l|ll|ll|ll|l|ll|l|l|l|l|ll|ll|lll|ll|ll|ll|l|ll|l|l|

October 1, 2003

Account No.: 5490992468107481

Dear Phyllis J. Meyer,

Thank you for your last payment of $301.00 on the above-referenced account. Remember, your next payment of $370.00 is due by October 9, 2003. You have taken the first step towards lowering your debt.

*As we discussed last month, your account is still severely past due.* Unfortunately, if we do not receive your payment by the due date, federal regulations require that your account be written off as a bad debt. If your account is written off as a bad debt, we may be forced to take the following actions:

- Place your account with a third party collection agency
- Refer your account to an attorney for legally binding arbitration
- Sell your account to a third party

We do not want this to happen. We will continue to work with you to establish future payment arrangements that will help you resolve your debt. Please call us today.

Please call 1-800-322-1846. Our knowledgeable Account Managers are ready to help you.

Sincerely,

*Nancy Criss*

Nancy Criss
Vice President

A 0007 54084 V01 0002666.2751418 180BL50

Source Code: 180BL501001

Ex.I



## FAX COVER SHEET
### 320 University Avenue
### Newark, NJ 07102

Total number of pages
(including cover sheet)

To: _Diane_

From: _Casandra Golden_

Phone Number: _301-463-9193_

Phone Number: _888-903-6262 #21092_

Fax Number: _301-729-9972_

Fax Number: _973 848 4404_

Date and Time: _September 4, 2003_

### IMPORTANT CONFIDENTIALITY INFORMATION

If you are not the intended recipient of this facsimile, or the person responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited as it may contain information that is privileged, confidential, and exempt from disclosure under applicable law.

If you have received this facsimile in error, please telephone the sender immediately, then mail the document(s) to us at the address below.

Comments: _I do apologize for the long wait, because I had to get this approved first. If you have any questions please call me at the number and extension above._

*Excellence is a point of view.*
*It isn't brilliance or getting the breaks.*
*It is consistent attention to detail*
*and honest respect for the Customer.*

MBNA America • Wilmington, DE 19884 • (302) 453-9930

EX. J

**MBNA**

PLATINUM PLUS

the new standard

www.mbnanetaccess.com

PHYLLIS J MEYER
707 S PEARL ST
ROCKPORT TX 78382-241907

September 04, 2003

Account No.: 5490 9924 6810 7481

Dear Phyllis J Meyer,

MBNA wants to make life easier. To help you, we are offering to settle the above account. Your current balance is $15,564.15. We will accept $3,895.00 as settlement of this account. If you accept this offer, we must receive the first installment of $301.00 by September 05, 2003. Each future installment of $1,797.00 is due by the 10th day of each month for the next 2 month(s).*

To get started on this special program, we must receive $301.00 by September 05, 2003. For your convenience, you can make your payment over the telephone by using our pay-by-phone service. Please have your checkbook ready when you call. A fee will be assessed for this service. If you prefer, you can mail your payment to P.O. Box 15137, Wilmington, DE 19850-5137. Please keep this letter as a confirmation of your settlement, as the terms of this offer will not be reflected on your monthly statement.

If you have any questions, please call 1-888-903-6262, Monday through Thursday from 8 a.m. to 9 p.m., or Friday and Saturday, 9 to 1 (Eastern time). Our knowledgeable Account Managers are ready to assist you.

Sincerely,

Cassandra Golden
Customer Assistance department

*In return, your account will be considered settled, and you will not be obligated to pay the remaining balance provided no additional charges appear on this account after the date of this letter. Also, any future account activity that results in a credit balance will become the property of MBNA. Any violation of this agreement will result in the full balance being due immediately. All payments must be received by the above stated due dates.

R Johnson
MBN 8L48 1-1 US-EN

xxxxxxxxxxx - 0000

Feb.11, 2003

NBNA America
P.O. Box 15019
Wilmington, DE. 19886-5019

From;
Phyllis J. Meyer
707 S Pearl St. Lot G4
Rockport Tx 78382
361-790-5843
Acct No.  5490 9924 6910 7481

I am writing in reference to my account with you. I spoke with 3 people on Feb. 9th 2003 about my interest rate. The first person I spoke with could not help me so she transferred me to a very nice gentleman. He went over my account and could not understand why you raised my interest rate. He said he would reverse it and he tried but could not. He said he would have to transfer me to another department and he did. Then I had to speak with this rude man. He had every excuse for why my interest rate was changed. First excuse was it was raised to discourage me from using my credit card anymore. I told him I had not used it since I had received the balance transfer and besides that all you had to do was make it so I couldn't change anymore on it. So that didn't work. The second excuse was my dept rate to income ratio was too much. Well it has not changed since you gave me the balance transfer. The third reason was I only had a 6 months promotion on that interest rate. That is not true. I had called several of my credit cards and I could have got 5.9 to 7.9 on some of them but I choose yours at 9.9 because it was until it was paid off. He also said I was sent a letter telling me my interest rate was going up and if I did not accept this I was to sign something and send it back. At the time he said it was sent I was in the hospital and someone was paying my bills for me.
I have never been late on this account and have always paid more then the minimum.
I am not going to pay 24.9% interest when that was not our agreement. If you want to be paid and I want to pay you, then you need to drop my interest rate back to 9.9 and take the ridiculous interest charges off.
I would appreciate your immediate attention to this matter so I can continue paying my bill.

Sincerely

_____

Phyllis J Meyer

Ex. K





## FAX COVER SHEET
### 320 University Avenue
### Newark, NJ 07102

Total number of pages
(including cover sheet)

To: _Diane Hoffman_     From: _Casandra Golden_

Phone Number: _____     Phone Number: _888 903 6262_

Fax Number: _361 729 8972_     Fax Number: _973 848 4404_

Date and Time: _10·10·03_

### IMPORTANT CONFIDENTIALITY INFORMATION

If you are not the intended recipient of this facsimile, or the person responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited as it may contain information that is privileged, confidential, and exempt from disclosure under applicable law.

If you have received this facsimile in error, please telephone the sender immediately, then mail the document(s) to us at the address below.

Comments: _____

_____

_____

_____

_____

*Excellence is a point of view.*
*It isn't brilliance or getting the breaks.*
*It is consistent attention to detail*
*and honest respect for the Customer.*

EX. L

**MBNA America • Wilmington, DE 19884 • (302) 453-9930**

**NCO Financial Systems, Inc.®**

2020 N Central Avenue
Suite 300
Phoenix, AZ 85004

(602) 263-1141
(800) 933-6736
Fax: (602) 626-1191

July 7, 2004                                        Reference #: US4987

Phyllis Meyer
707 S Pearl Street
Rockport TX 78382

Creditor/ NCO Portfolio Management, Inc.

Regarding: MBNA America Bank N.A.

Account Number      5490992468107481

Amount Owing:       $ 18,680.52

Settlement Amount:$ 7472.20

Dear Mrs. Meyer,

Pursuant to our conversation on 07/01/04, this letter is to inform you that the above client will accept the amount of $7472.20 and release any further obligation towards the above referenced cardholder, if payment is received by 07/15/04. We will report to all credit reporting agencies as settled in full with a zero balance.

Please remit payment to:
                         NCO Financial Systems, Inc.
                         507 Prudential Road
                         Horsham, PA 19044
This is an attempt to collect a debt.   Any information obtained will be used for that purpose.
This is a communication from a debt collector.

Sincerely,

**NCO Financial Systems, Inc.**

Luis Gonzalez
Collection Specialist
1-800-933-6736 ext. 2031

LG/sp

Phoenix Office Hours:   7:00 am – 8:00 pm Monday through Thursday.
                        7:00 am – 5 pm Friday.  7:00 am – 12:00 Noon Saturday.                    Ex. M.

**PLATINUM PLUS®**
*the new standard*
www.mbnanetaccess.com

| ACC. NUMBER |
|---|
| 5490 9924 6810 7481 |

| PAYMENT DUE DATE | NEW BALANCE TOTAL |
|---|---|
| 10/21/03 | $15,663.84 |

| TOTAL MINIMUM PAYMENT DUE | AMOUNT ENCLOSED |
|---|---|
| $2,323.00 | |

*DETACH TOP PORTION AND RETURN WITH PAYMENT*

**CARDHOLDER SINCE 1994**

please check
payable to:

MBNA AMERICA
P.O. BOX 15137
WILMINGTON, DE 19886-5137

For account information call 1-800-789-6685
Print change of address or new telephone number below

Address _____

City _____ State _____ Zip _____
Home phone _____ Work phone _____

PHYLLIS J MEYER
707 S PEARL ST
ROCKPORT   TX   78382-241907

19    01566384002323000005490992468107481

| Account Number | Credit Line | Cash or Credit Available | Days in Billing Cycle | Closing Date | Total Minimum Payment Due | Payment Due Date |
|---|---|---|---|---|---|---|
| 5490 9924 6810 7481 | $14,200.00 | | 31 | 09/22/03 | $2,323.00 | 10/21/03 |

| Posting Date | Transaction Date | Reference Number | Card Type | Category | Transactions | Charges | Credits (CR) |
|---|---|---|---|---|---|---|---|
| | | | | | **SEPTEMBER 2003 STATEMENT** | | |
| **PAYMENTS AND CREDITS** | | | | | | | |
| 08/26 | | 2425 | MC | | EXPRESS PAYMENT - THANK YOU | | 15.00 CR |
| 09/05 | | 3387 | MC | | EXPRESS PAYMENT - THANK YOU | | 30 |
| **PURCHASES AND ADJUSTMENTS** | | | | | | | |
| 09/22 | 08/23 | 5298 | MC | C | OVERLIMIT FEE | 35.00 | |
| 09/22 | 09/22 | 5263 | MC | C | LATE FEE FOR PAYMENT DUE 09/21 | 35.00 | |
| | | | | | **TOTAL FOR BILLING CYCLE FROM 08/23/2003 THROUGH 08/22/2003** | $70.00 | $3 |

OUR RECORDS SHOW YOUR ACCOUNT IS PAST DUE AND YOUR BALANCE EXCEEDS APPROVED CREDIT LIMITS

**IMPORTANT NEWS**

AN IMPORTANT AMENDMENT TO YOUR ACCOUNT TERMS IS ENCLOSED.

PAY YOUR BILL QUICKLY WITH PAY-BY-PHONE SERVICE. CALL 1-866-297-9258 TO
USE THIS AUTOMATED SERVICE. PAYMENT POSTS THE SAME OR NEXT BUSINESS DAY.

**SUMMARY OF TRANSACTIONS**

| Previous Balance | (-) Payments and Credits | (+) Cash Advances | (+) Purchases and Adjustments | (+) Periodic Rate FINANCE CHARGES | (+) Transaction Fee FINANCE CHARGES | (=) New Balance Total |
|---|---|---|---|---|---|---|
| $15,579.15 | $316.00 | $0.00 | $70.00 | $330.69 | $0.00 | $15,663.84 |

**TOTAL MINIMUM PAYMENT DUE**

Past Due Amount .................. $1,971.00
Current Payment .................. $352.00
Total Minimum Payment
Due .................. $2,323.00

**FINANCE CHARGE SCHEDULE**

| Category | Periodic Rate | Corresponding Annual Percentage Rate | Balance Subject to Finance Charge |
|---|---|---|---|
| **Cash Advances** | | | |
| A. BALANCE TRANSFERS, CHECKS. | 0.068438% DLY | 24.98% | $15,138.35 |
| B. ATM, BANK. | 0.068438% DLY | 24.98% | $0.00 |
| C. PURCHASES. | 0.068438% DLY | 24.98% | $448.79 |

**FOR YOUR SATISFACTION, EVERY HOUR, EVERY DAY**

• For Customer Satisfaction and up to the minute automated information including, balance, available credit, payments received, payments due, due date, payment address information, or to request duplicate statements, call **1-800-789-6685**.

• For TDD (Telecommunication Device for the Deaf) assistance, call **1-800-346-3178**

• Mail payments to: MBNA AMERICA, P.O. BOX 15137, WILMINGTON, DE 19886-5137.

• Billing rights are preserved only by written inquiry. Mail billing inquiries, using form on the back, and other inquiries to: MBNA AMERICA, P.O. BOX 15026, WILMINGTON, DE 19850-5026.

| FOR THIS BILLING PERIOD: | |
|---|---|
| ANNUAL PERCENTAGE RATE .................. | 24.98% |
| (Includes Periodic Rate and Transaction Fee Finance Charges.) | |

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

5699   538   69Z 1112 0200 00

5490 9924 6810 7481   PAGE 1 OF 1



## INFORMATION ABOUT THIS STATEMENT

### PAYMENTS

We credit payments as of the date received, if the payment is 1) received by 2 p.m. (Eastern Time), 2) received at the address shown in the upper left-hand corner of the front of this statement, 3) paid with a check drawn in U.S. dollars on a U.S. financial institution or a U.S. dollar money order, and 4) sent in the enclosed return envelope with only the top portion of this statement accompanying it. Payments received after 2 p.m. on any day including the Payment Due Date, but that otherwise meet the above requirements, will be credited as of the next day. We will reject payments that are not drawn in U.S. dollars and those drawn on a financial institution located outside of the United States. Credit for any other payments may be delayed up to five days. No payment shall operate as an accord and satisfaction without the prior written approval of one of our Senior Officers.

### BILLING RIGHTS SUMMARY
#### In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, please write to us on a separate sheet of paper or use a copy of the form provided below. We must receive your written inquiry at P.O. Box 15026, Wilmington, DE 19850, no later than 60 days after we sent you the first bill on which the transaction or error appeared. You may telephone us, but doing so does not preserve your billing rights. In your letter or on the form, give

the following information: your name and account number, the dollar amount of the suspected error, the posting date of the transaction in question, and an explanation of why you believe there is an error (if you are using the form, check the appropriate box). If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are obligated to pay the parts of your bill that are not in question. We cannot report you as delinquent or take any action to collect the amount you question while we investigate your inquiry.

If you have authorized us to pay your credit card bill automatically from your savings or checking account with us, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us at least three business days before the automatic payment is scheduled to occur.

#### Special Rule for Credit Card Purchases

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have here this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

## IMPORTANT INFORMATION ABOUT THIS ACCOUNT

### GRACE PERIOD

"Grace Period" means the period of time when you will not accrue Periodic Rate Finance Charges on certain transactions or balances. There is no Grace Period for Category A or B Cash Advances. If you pay in full this statement's Previous Balance by its Payment Due Date and if you paid in full this statement's Previous Balance by its Payment Due Date, then you will have a Grace Period during the billing cycle that began the day after this statement's Closing Date on the Category C or D portions of this statement's New Balance Total.

During a 0% promotional APR period: 1) no Periodic Rate Finance Charges accrue on balances in the Categories with the 0% promotional APR; and 2) you must pay the Total Minimum Payment Due by its Payment Due Date to maintain the 0% promotional APR.

** If a Corresponding Annual Percentage Rate in the Finance Charge Schedule on the front of this statement contains a * * * symbol, then with respect to those Categories: 1) the 0% promotional APR for each of the categories will expire as of the Payment Due Date shown on this statement; and 2) you must pay this statement's New Balance Total by its Payment Due Date to avoid Periodic Rate Finance Charges after the end of this 0% promotional APR period on those balances existing as of the Closing Date of this statement.

### CALCULATION OF BALANCES SUBJECT TO FINANCE CHARGES

Category A and Category B – Average Balance Method (including new Cash Advances): We calculate separate Balances Subject to Finance Charge for Category A balances and Category B balances. We do this by: (1) calculating a daily balance for each day in this statement's billing cycle; (2) calculating a daily balance for each day prior to this statement's billing cycle that had a "Pre-Cycle Cash Advance" balance, which is a Cash Advance with a transaction date prior to this statement's billing cycle but with a posting date within this statement's billing cycle; (3) adding all the daily balances together; and (4) dividing the sum of the daily balances by the number of days in this statement's billing cycle.

To calculate the daily balance for each day in this statement's billing cycle, we take the beginning balance, add an amount equal to the applicable Daily Periodic Rate multiplied by the previous day's daily balance, add new Cash Advances and Transaction Fees, and subtract applicable payments and credits. If any daily balance is less than zero we treat it as zero.

To calculate a daily balance for each day prior to this statement's billing cycle that had a Pre-Cycle Cash Advance balance, we take the beginning balance attributable solely to the Pre-Cycle Cash Advances (which will be zero on the transaction date of the first Pre-Cycle Cash Advance), add an amount equal to the applicable Daily Periodic Rate multiplied by the previous day's daily balance, and add only the applicable Pre-Cycle Cash Advances and their related Transaction Fees. We exclude from this calculation all transactions posted in previous billing cycles.

Category C and Category D – Average Daily Balance Method (including new transactions): We calculate separate Balances Subject to Finance Charge for Category C balances and Category D balances. We do this by: (1) calculating a daily balance for each day in the billing cycle; (2) adding all the daily balances together; and (3) dividing the sum of the daily balances by the number of days in the billing cycle.

To calculate the daily balance for each day in this statement's billing cycle, we take the beginning balance, add an amount equal to the applicable Daily Periodic Rate multiplied by the previous day's daily balance, add new transactions, new Account Fees, and new Transaction Fees, and subtract applicable payments and credits. If any daily balance is less than zero we treat it as zero. If the Previous Balance shown on this statement was paid in full by its Payment Due Date but the prior statement's Previous Balance was not paid in full, then on the day after that payment in full date, we exclude from the beginning balance new transactions, new Account Fees, and new Transaction Fees which posted on or before that payment in full date, and we do not add new transactions, new Account Fees, or new Transaction Fees which post after that payment in full date.

We include the costs for the MBNA Credit Protection plan or for credit insurance purchased through us in calculating the beginning balance for the first day of the billing cycle after the billing cycle in which such costs are billed.

### TOTAL PERIODIC RATE FINANCE CHARGE COMPUTATION

Periodic Rate Finance Charges accrue and are compounded on a daily basis. To determine the Periodic Rate Finance Charge for each category, we multiply the Balance Subject to Finance Charge by its applicable Daily Periodic Rate and that result by the number of days in the billing cycle. To determine the total Periodic Rate Finance Charge for the billing cycle, we add the Periodic Rate Finance Charges for each category together. Each Daily Periodic Rate is calculated by dividing its corresponding Annual Percentage Rate by 365.

### HOW WE ALLOCATE YOUR PAYMENTS

We will allocate your payments in the manner we determine. In most instances, we will allocate your payments to balances (including transactions made after this statement) with lower APRs before balances with higher APRs. This will result in balances with lower APRs (such as new balances with promotional APR offers) being paid before any other existing balances.

### MISCELLANEOUS

For the complete terms and conditions of your account, consult your Credit Card Agreement. Individualized BankCard Services is a tradename of MBNA America Bank, N.A. This account is issued and administered by MBNA America Bank, N.A.

---

**CUSTOMER STATEMENT OF DISPUTED ITEM** *(Please print in blue or black ink and use a separate form for each billing inquiry.)*

To ensure efficient processing of your request, have the merchant reference number(s) available for the charge(s) in question and call 1-888-256-0212. Billing rights are preserved only by written inquiry. Prior to mailing your billing inquiry to the address listed below, make a copy of this form and complete a separate form for each charge in question. Please print legibly. Remember to provide copies of all documentation to assist with the investigation of your billing inquiry (i.e. contracts, invoices, detailed letter, credit slips, sales slips).
IF NECESSARY, INCLUDE A LETTER DETAILING YOUR BILLING INQUIRY.
PLEASE DO NOT ALTER WORDING ON THIS FORM AND DO NOT MAIL YOUR LETTER OR FORM WITH YOUR PAYMENT.

YOUR NAME : _____    ACCOUNT NUMBER: _____
POSTING DATE: _____ TRANSACTION DATE: _____    REFERENCE NUMBER: _____
AMOUNT $: _____ DISPUTED AMOUNT $: _____    MERCHANT NAME: _____

Check only one box. Choosing more than one box may hinder our ability to service your request.

[ ] 1. The amount of the charge was increased from $ _____ to $ _____, or my sales slip was added incorrectly. Enclosed is a copy of the sales slip that shows the correct amount.

[ ] 2. I certify that the charge listed above was not made by me or a person authorized by me to use my card, nor were the goods or services represented by the transaction received by me or a person authorized by me.

[ ] 3. I have not received the merchandise that was to be shipped to me on __/__/__ (MM/DD/YY). I have asked the merchant to credit my account.

[ ] 4. I was issued a credit slip that was not shown on my statement. A copy of my credit slip is enclosed. If the merchant has agreed to provide credit, so advise the merchant has up to 30 days to apply this credit to your account.

[ ] 5. Merchandise that was shipped to me has arrived damaged and/or defective. I returned it on __/__/__ (MM/DD/YY) and asked the merchant to credit my account. Please describe how the merchandise was damaged and/or defective. _____

[ ] 6. Although I did engage in the above transaction, I have contacted the merchant, returned the merchandise on __/__/__ (MM/DD/YY) and requested a credit adjustment. I either did not receive this credit or it was unsatisfactory. I am disputing this charge because: _____
If unable to return merchandise, please explain _____

[ ] 7. I certify that the charge in question was a single transaction, but was posted twice to my statement. I did not authorize the second transaction.
Sale #1 $ _____ Reference # _____
Sale #2 $ _____ Reference # _____

[ ] 8. I called the merchant on __/__/__ (MM/DD/YY) to cancel the pre-authorized order (reservation). Please note cancellation # and if available, enclose a copy of your telephone bill showing date and time of cancellation. Reason for cancellation _____

[ ] 9. Although I did engage in the above transaction, I have contacted the merchant for credit. The services to be provided on __/__/__ (MM/DD/YY) were not received or were unsatisfactory. Describe the services expected to be received _____

[ ] 10. I certify that I do not recognize the transaction. Merchants often provide telephone numbers next to their name on your billing statement. If you do not recognize a transaction please attempt to contact the merchant for transaction information.

[ ] 11. Other. Please call and attach a detailed letter.

Prior to mailing this form and to better service your request, please call 1-888-256-0212 Monday-Thursday 8 a.m.-9 p.m. and Friday 8 a.m.-7 p.m. Eastern Standard Time.
In order to preserve your billing rights, please return a copy of this form and any additional information regarding the merchant charge in question to:
Attn: Billing Inquiries, P.O. BOX 15026, WILMINGTON, DE 19850-5026, USA.
You may receive written correspondence or a telephone call requesting additional information in service your request.

Signature (required): _____    Date: _____
Day Telephone #: _____    Alternate Telephone #: _____
PLEASE KEEP THE ORIGINAL FOR YOUR RECORDS AND SEND A COPY OF THIS STATEMENT



---

# STATUTORY DURABLE POWER OF ATTORNEY

---

**NOTICE:**   THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE DURABLE POWER OF ATTORNEY ACT, CHAPTER XII, TEXAS PROBATE CODE. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.   THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, PHYLLIS J. MEYER, appoint my daughters, PAULETTE MEYER GRUMBLES and DIANE MEYER HOFFMAN, as my co-agents (hereinafter referred to as "agent") to act for me in any lawful way with respect to all of the following powers except for a power that I have crossed out below.   If any member of this group fails or ceases to serve, the other member of the group then serving will have the right to continue service as agent alone.   My agent will serve without the requirement of bond or other security.

TO WITHHOLD A POWER, YOU MUST CROSS OUT EACH POWER WITHHELD.

Real property transactions;
Tangible personal property transactions;
Stock and bond transactions;
Commodity and option transactions;
Banking and other financial institution transactions;
Business operating transactions;
Insurance and annuity transactions;
Estate, trust and other beneficiary transactions;
Claims and litigation;
Personal and family maintenance;
Benefits from social security, Medicare, Medicaid, or other governmental programs or civil or military service;
Retirement plan transactions;
Tax matters.

IF NO POWER LISTED ABOVE IS CROSSED OUT, THIS DOCUMENT SHALL BE CONSTRUED AND INTERPRETED AS A GENERAL POWER OF ATTORNEY, AND MY AGENT (ATTORNEY IN FACT) SHALL HAVE THE POWER AND AUTHORITY TO PERFORM OR UNDERTAKE ANY ACTION I COULD PERFORM OR UNDERTAKE IF I WERE PERSONALLY PRESENT.

1

Ex. O

## SPECIAL INSTRUCTIONS:

In addition to the powers granted above, I grant to my agent all of the following powers:

A.   Special instructions applicable to gifts (initial in front of the following sentence to have it apply).

   I grant my agent (attorney in fact) the power to apply my property to make gifts, except that the amount of a gift to an individual may not exceed the amount of annual exclusions allowed from the federal gift tax for the calendar year of the gift.

B.   I ratify and confirm all that my agent will do or cause to be done by reason of the authority vested by this power of attorney and by law. I further provide that my agent may indemnify and hold harmless any third party who accepts and acts under this power of attorney. No person, firm, agency or entity will be obligated to see to application of payment delivered to my agent for or on my behalf. I bind myself, my estate, my successors, heirs, and assigns, to indemnify and hold harmless any person, agency, or entity from any loss or claim which may be sustained as the result of relying upon this document and the authority of my agent. My agent is authorized to proceed in my name and on my behalf against any person, agency or entity who will fail or refuse to recognize the authority of my agent or who will refuse to transact business with my agent to my harm and detriment. My agent shall have the power to take legal action to compel third parties to recognize the validity of this instrument, and the power to sue for damages, both punitive and actual, in the case of a refusal by a third party to honor this power.

C.   My agent may create for me one or more revocable trusts (referred to as a "grantor trust") of which I am an income beneficiary and with such person or persons as my agents shall select as the Trustee or Co-Trustees (including my agents or any corporate trustee having capital and surplus at the time of its appointment in excess of $10,000,000.00), without bond or other security, and with such other terms and provisions as my agent shall deem appropriate, including, but not limited to, provisions to minimize or eliminate any death or transfer taxes which may be imposed on my estate, any grantor trust, any beneficiary of my estate or any beneficiary of any grantor trust, and to grant to the Trustee or Co-Trustees of any grantor trust any one or more of the powers granted to a trustee under the Texas Trust Code, as amended, provided that I retain the power to revoke any grantor trust, in whole or in part at any time or I have a general power of appointment over the assets of such trust; and further provided that at my death the assets of any such grantor trust shall pass to the beneficiary or beneficiaries or Trustee or Trustees named in such grantor trust, or if there is no person named in such grantor trust to whom such assets shall pass, then such assets shall be delivered to the agent of my estate.

2

If I have created a revocable trust of which I am the income beneficiary, my agent will have the authority to transfer any or all property in which I have legal or beneficial title to my revocable trust. I specifically authorize my agent to make transfers of my property not protected by the trust to my revocable trust, especially during any period in which I may be disabled. My agent <u>will not</u> have the authority to revoke or amend my revocable trust.

D.    I vest in my agent all of the power and authority given to trustees by the trust laws of the state of Texas. If my agent determines that it is in my best interest under the facts and circumstances then existing, I authorize my agent to take possession of any and all of my property and estate, as trustee, and to hold, conserve and administer such property for me and for my general welfare. My agent will be responsible only for the property of my estate over which the representative shall assert direct control, and will not have liability for the loss of income from, or the depreciation in value of, assets which the representative does not possess or which are retained in the form my agent received them. My agent will have the authority to employ such professional help and consultation as needed to assist with the prudent administration of my property and to provide for my welfare. The expense of professional help, consultation and assistance will be an expense of administration. My agent is authorized, upon my death, to make direct payment for any expense related to my hospitalization, illness, treatment, and care prior to my death and any expense related to my death and the settlement of my estate. The trust created by this document will continue for a reasonable time in which to conclude administration, pay expenses of termination (including the discretionary payment of expenses and estate settlement costs), and to make distribution of the trust property to those entitled thereto.

E.    My agent may delegate to a state or national banking corporation, having trust powers and an active trust department, by agency agreement or otherwise, any one or more of the following administrative functions: the custody and safekeeping of assets, record keeping and accounting, and/or investment authority. The expense of the agency or other arrangement will be paid as an expense of administration pursuant to this power of attorney.

<u>THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED. THIS POWER OF ATTORNEY IS NOT AFFECTED BY MY SUBSEQUENT DISABILITY OR INCAPACITY.</u>

I agree that any third party who receives a copy of this document may act under it. Revocation of the durable power of attorney is not effective as to a third party until the third party receives actual notice of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed on June 25, 2001.

*Phyllis J. Meyer*
PHYLLIS J. MEYER

3

THE STATE OF TEXAS           §
                             §
COUNTY OF TRAVIS             §

This document was acknowledged before me on June 25, 2001, by PHYLLIS J. MEYER, Principal.



NOTARY PUBLIC, THE STATE OF TEXAS

THE ATTORNEY IN FACT OR AGENT, BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

4

1 — 882-3322

# IN THE
## NATIONAL ARBITRATION FORUM

### CLAIM

NCO Portfolio Management, Inc.
c/o NCO Financial Systems, Inc.
1804 Washington Blvd.
Department 500
Baltimore, MD 21230
USA

        **CLAIMANT,**

          **RE:** NCO Portfolio Management, Inc. v Phyllis J Meyer
          **Forum File Number:** FA0409000320920
          **Account No.:** US4987C5490992468107481

Phyllis J Meyer
707 S Pearl St
Rockport, TX 78382
USA

        **RESPONDENT(S)**

**RESPONDENT(S): THIS IS AN ARBITRATION CLAIM AGAINST YOU FOR MONEY OR OTHER RELIEF. YOU HAVE THIRTY (30) DAYS TO SERVE THE CLAIMANT WITH A WRITTEN RESPONSE. IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE NATIONAL ARBITRATION FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU.**

For a Claim against Respondent(s), NCO Portfolio Management, Inc. ("NCOPM"), states:

1. By way of contract and retention and use of the credit account issued by MBNA America Bank, N.A. ("MBNA"), Respondent(s) became bound by the terms of MBNA Credit Card Agreement, which is attached hereto and incorporated herein by reference. MBNA America subsequently sold this account to Claimant, NCOPM, with a transfer of all right, title and interest thereto.

2. Respondent(s) is/are in default under the terms of that Agreement and is/are now indebted to NCOPM in the amount of $16059.40, as reflected in the attached account summary. In addition, the Respondent's account has incurred interest charges in the amount of $3245.89 as of the date of filing. If interest-to-date charges are referenced, interest was calculated at the rate of 24.98% on the principal balance. Interest does continue to accrue at the same rate on the principal balance from the date of filing.

3. Despite repeated demands, Respondent(s) has/have not paid the amounts due.

4. Claimant requests an Award for the amounts reflected in Paragraph 2, Process of Service fees, and all arbitration fees, as incurred, and provided for by the Credit Card Agreement and permitted by the laws of the State of Delaware, plus Attorneys fees of $2895.79, as permitted by the laws of the State of Delaware; said amount equals 15% of the outstanding balance. The attached Agreement contains a provision for reasonable attorneys fees as well as sets forth the governing law as that of the State of Delaware. Said



law specifically provides that an attorney fee may be awarded in an amount up to 20% of the amount "ajudged for principal and interest". 10 Del. Code §3912 (Pleading & Practice).

5. The Agreement between the parties contained an arbitration provision that stated, in pertinent part:

"**Arbitration:** Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum office, www.arb-forum.com, or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone 1-800-474-2371. If the NAF is unable or unwilling to act as arbitrator, we may substitute another nationally recognized, independent arbitration organization that uses a similar code of procedure. At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees. In no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the claim had been resolved in a state court with jurisdiction. Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator shall follow existing substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor any claims or privilege recognized by law. If any party requests, the arbitrator shall write an opinion containing the reasons for the award.

No Claim submitted to arbitration is heard by a jury and no Claim may be brought as a class action or as a private attorney general. You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim. This Arbitration Section applies to all Claims now in existence or that may arise in the future.

This Arbitration Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.

For the purposes of this Arbitration Section, "we" and "us" means MBNA America Bank, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us. Also, for the purposes of this Arbitration Section, "you" or "yours" shall mean any person or entity approved by us to use the account, including but not limited to all persons or entities contractually obligated on the Account and all authorized users of the account.

If any part of this Arbitration Section is found to be invalid or unenforceable under any law or statute consistent with the FAA, the remainder of this Arbitration Section shall be enforceable without regard to such invalidity or unenforceability.

THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS."

## General

In this Credit Card Agreement, the words "you" and "your" refer to each and all of the persons who applied a credit card or set forth or under an account we hold. This Credit Card Agreement (the "Agreement") consists of this document and the terms and conditions set forth in the Required Federal Disclosure section of the accompanying rate carrier, which is incorporated herein and made a part hereof. The words "we", "us", "our" and "MBNA America" mean MBNA America Bank, N.A.

When you accept or use the account, you agree to the terms in this Agreement. You should sign your card before you use it.

You consent to and authorize MBNA America, any of its affiliates, or its marketing associates to monitor and/or record any of your telephone conversations with our representatives or the representatives of any of those companies.

All capitalized terms not defined herein shall have the meaning set forth in the Required Federal Disclosures section of the rate carrier.

## Information Gathering and Sharing

From time to time, we may obtain updated information about you including, for example, credit information. We may share information about you with credit reporting agencies and others, including merchants, and among companies affiliated with us. You may request that information about you not be shared among our affiliates other than information pertaining solely to transactions or experiences between you and us (or an MBNA America Affiliate), by writing us at MBNA, Affiliate Information Sharing, P.O. Box 15342, Wilmington, DE 19850-5342. Please include your name, address, home phone number and all MBNA America account numbers.

If you believe that inaccurate or incomplete information about you or your account has been shared by us with a credit reporting agency, write to us at: MBNA, Credit Reporting Agencies, P.O. Box 17054, Wilmington, DE 19884-7054. Please include your name, address, home phone number, and account number, and explain which information you believe to be inaccurate or incomplete.

use your credit card to purchase or lease goods or services from persons who honor the card. You may also use your card to obtain Cash Advances. You may obtain a Check Cash Advance, or any Other Cash Advance, to make a deposit to or any other credit account with us. You may also use your account for business or commercial purposes.

Certain establishments may cash your personal check upon presentment of your card. In the event we are required to pay the amount of a check cashed in this way, because the check is not paid for any reason, we will charge your account for a Cash Advance in the amount of the check and any processing charge we actually incur.

If you permit any person to have access to your card or account number with the authorization to make a charge, you may be liable for all charges made by that person including charges for which you may not have intended to be liable.

The transaction date for Check Cash Advances and Balance Transfers is the date you or the person to whom the check is made payable first deposits or cashes the check. The transaction date is a reference point to track Cash Advances & the date that the corresponding posts to the account.

You may request a stop payment on a Check Cash Advance by providing us with the check number, dollar amount, and payee such as they appear on the Check Cash Advance. Oral and written stop payment requests on Check Cash Advances are effective for six months from the day that we place the stop payment on your account.

You may not use a purchase Check Cash Advance to obtain credit under your account. If you do purchase a Check Cash Advance, we may elect to honor it upon presentment or return it unpaid to the party which presented it to us for payment, without in either case awaiting the date shown on the Check Cash Advance. We are not liable to you for any loss or expense incurred by you arising out of the action we elect to take.

## Repayment

You promise to pay us the amounts of all credit you obtain; this includes all purchases, cash advances, fees.

or rate of the debt of us.

... for the purpose of this Arbitration Section, "we" and ... before whom a single item, VISA, its parent, subsidiaries and new affiliated, brokers, intermediaries, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collection and all of their officers, directors, employees and agents) if such only in such a third party is named by you as a co-defendant in any Claim you assert against us. Also, for the purposes of this Arbitration Section, "you" or "yours" shall mean any person or entity approved by us to the the account, including but not limited to all persons or entities contractually obligated on the Account and in each case their heirs and personal ...

If any part of this Arbitration Section is found to be invalid or unenforceable under any law or statute consistent with the FAA, the remainder of this Arbitration Section shall be enforceable without regard to such invalidity or unenforceability.

THE RESULT OF THIS ARBITRATION AGREEMENT IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

## Platinum Plus Coverage Credit Insurance Benefits, Limitations, Costs & Exclusions

Platinum Plus Coverage pays your minimum monthly payment, up to your balance on the date of loss (to a extent of $10,000, until you return to work). If you are involuntarily unemployed, totally disabled, or if you or your spouse takes covered family leave. Platinum Plus Coverage also pays your insured outstanding balance up to the limit of your outstanding balance, your credit limit, or $10,000 if you die.

Eligibility: Coverage and benefits insureds must be the primary cardholder of an applicant. Cardholders are not eligible. Under age 70 ... ...

Eligibility ... covers your death, involuntary unemployment due to job loss, general strike, unionized labor dispute or lockout, total disability due to sickness or injury if you are unable to perform the material & substantial duties of your job for any reason ...

Exclusions: Life, balance in the first 6 months of coverage (not MD & MO), involuntary unemployment, retirement, resignation, voluntary forfeiture of income or job loss due to willful or criminal misconduct, disability, strikes in the military discharge in NY, normal seasonal unemployment in TX. Disability, normal pregnancy or childbirth (not CA, ME & NV), intentionally self-inflicted injuries (not MD) or a pre-existing medical condition.

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Phyllis Meyer

**DEFENDANTS**

NCO Financial Systems, Inc.
MBNA America Bank, N.A.

(b) County of Residence of First Listed Plaintiff   Aransas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

David A. Sibley
P.O. Box 9610
Corpus Christi, Texas 78469-9610

Attorneys (If Known)

Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product / Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury— | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & / Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Injury Product | ☐ 650 Airline Regs | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability / Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine / **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | **LABOR** | | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Injury | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 730 Labor/Mgmt Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting / **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ / Sentence | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations / Habeas Corpus | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 535 Death Penalty | ☐ 791 Empl. Ret Inc | 26 USC 7609 | State Statutes |
| | / ☐ 540 Mandamus & Other | Security Act | | ☒ 890 Other Statutory Actions |
| | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C 1692k (Federal Fair Debt Collection Practices Act); Texas Fair Debt Collection Practices Act;
Unreasonable Debt Collection, Usury, Breach of Contract, Usury

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   $25,000

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

N/A

JUDGE _____

DOCKET NUMBER _____

DATE   10/11/04

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUN_____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.